UNITED STATES, Appellee

v.

Joshua P. NAVRESTAD, Specialist
U.S. Army, Appellant

No. 07-0199

Crim. App. No. 20030335

United States Court of Appeals for the Armed Forces

Argued December 4, 2007

Decided May 14, 2008

ERDMANN, J., delivered the opinion of the court, in which BAKER and RYAN, JJ., joined. EFFRON, C.J., filed a dissent in which STUCKY, J., joined.

Counsel

For Appellant:  Captain Nathan J. Bankson (argued); Colonel Christopher J. O'Brien, Lieutenant Colonel Steven C. Henricks, and Major Fansu Ku (on brief); Captain Eugene Ham.

For Appellee:  Captain Jaired D. Stallard (argued); Colonel John W. Miller II, Major Elizabeth G. Marotta, and Captain Michael Friess (on brief).

Military Judge:  Robin L. Hall

**This opinion is subject to revision before final publication**.

United States v. Navrestad, No. 07-0199/AR

Judge ERDMANN delivered the opinion of the court.

Specialist Joshua P. Navrestad was charged under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), with distributing and possessing child pornography in violation of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2251-2260 (2000). He entered pleas of not guilty to both specifications but was convicted at trial by a military judge.[1] We granted this case to determine two issues: whether sending a hyperlink to a Yahoo! Briefcase during an Internet chat session, where that Briefcase contained child pornography images, is legally sufficient to constitute distribution of child pornography; and whether utilizing a public computer to view images of child pornography in a Yahoo! Briefcase is legally sufficient to constitute possession of child pornography. We hold, under the facts of this case, that Navrestad's actions did not constitute either distribution or possession of child pornography and therefore reverse the United States Army Court of Criminal Appeals on those issues.

## Procedural Background

Navrestad was initially charged with distribution (Specification 4) and possession (Specification 5) of child

---

[1] Consistent with his guilty pleas, Navrestad was also convicted of the attempted transfer of obscene material to a minor and attempted enticement of a minor to engage in illegal sexual activity, under Article 134, UCMJ. Those specifications are not pertinent to the issues appealed by Navrestad.

United States v. Navrestad, No. 07-0199/AR

pornography in violation of the CPPA, as "crime[s] or offense[s] not capital" under clause 3 of Article 134, UCMJ. Before arraignment, however, Article 134, UCMJ, clause 1 and 2 language was added to both specifications.[2] Navrestad was found guilty of both specifications as amended and was sentenced to reduction to the lowest enlisted grade, forfeiture of all pay and allowances, two years of confinement, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.[3]

The Army Court of Criminal Appeals amended the possession specification (Specification 5) to exclude reference to the CPPA because the charged activity under that specification occurred solely in Germany and, in United States v. Martinelli, 62 M.J. 52 (C.A.A.F. 2005), this court held that the CPPA does not have extraterritorial application. United States v. Navrestad, No. ARMY 20030335, slip op. at 1-2. (A. Ct. Crim. App. Oct. 31, 2006). The Army court then affirmed a finding of guilty to

---

[2] Conduct is punishable under Article 134, UCMJ, if it prejudices "good order and discipline in the armed forces" [clause 1], if it is "of a nature to bring discredit upon the armed forces" [clause 2], or if it is a crime or offense not capital [clause 3]. See Manual for Courts-Martial, United States pt. IV, para. 60.a.-c. (2005 ed.) (MCM).

[3] We note an inconsistency in Specification 4, which charged Navrestad with distribution of child pornography but cited 18 U.S.C. § 2252A(a)(1), which prohibits the mailing or transportation of child pornography, rather than 18 U.S.C. § 2252A(a)(2), which prohibits distribution. The specification was treated as a distribution offense by all parties at trial. As we reverse Navrestad's conviction under this specification, any notice issues arising out of the charging language are moot.

United States v. Navrestad, No. 07-0199/AR

amended Specification 5 and the remaining findings of guilty.
Id.  The lower court reassessed and affirmed the sentence.  Id.

Specification 5 included Article 134, UCMJ, clause 1 and 2 language prior to arraignment and the theory of those provisions was presented at trial by the prosecution.  We recently held that a member can be convicted under Article 134, UCMJ, clause 1 or 2 when a clause 3 offense is set aside, if the clause 1 or 2 language has been alternatively charged.  United States v. Medina, 66 M.J. 21, 28 (C.A.A.F. 2008).  As the Article 134, UCMJ, clause 1 and 2 language was alternatively charged in Specification 5, the Army court properly set aside the CPPA language and reviewed the specification in the context of those provisions.

## Factual Background

Navrestad had an account at an Internet café in a United States Army morale, welfare and recreation center in Vilseck, Germany.  He would pay for a set amount of time and then use a kiosk-style computer terminal to access the Internet.  While at the café, Navrestad had Internet chat sessions over the course of several days with someone who identified himself as "Adam." Navrestad believed "Adam" was a fifteen-year-old boy from New Hampshire while actually "Adam" was Detective James F. McLaughlin, a New Hampshire police officer.

4

During the course of several chat sessions, Navrestad made requests for phone sex and encouraged "Adam" to engage in sex acts with "Adam's" younger brother and a friend of "Adam's" who was also a minor. During these sessions "Adam" made inquiries about seeking pictures, often in response to Navrestad's requests for phone sex. Eventually, "Adam" made a specific request for pictures of "guys 10-13."

In response to "Adam's" request, Navrestad sought out child pornography on the Internet using the Internet café computer and located links to several Yahoo! Briefcases[4] that contained child pornography. While at the Internet café, Navrestad opened and viewed the Briefcases to confirm the contents and then sent a hyperlink to one of the Briefcases that contained child pornography to "Adam."

The websites that are viewed on the Internet café computers are automatically saved in a "temporary internet files" folder on the computer's hard drive.[5] Navrestad and other Internet café

---

[4] Yahoo! Briefcase is an online service that allows users to store files on the Yahoo! servers. See http://briefcase.yahoo.com (follow "Help" hyperlink; then follow "Briefcase Basics" hyperlink; then follow "What is a Yahoo! Briefcase?" hyperlink) (last visited May 7, 2008). Users may or may not make the contents of their Briefcases public. See http://briefcase.yahoo.com (follow "Help" hyperlink; then follow "Abuse" hyperlink; then follow "What is the difference between private and public folders?" hyperlink) (last visited May 7, 2008).

[5] A temporary Internet file "is created when any of the Windows operating systems is installed with an Internet Browser. This temporary cache is a 'first in first out' algorithm in which the

United States v. Navrestad, No. 07-0199/AR

users did not have access to that folder and there is nothing in the record that indicates Navrestad was aware that the sites were being saved on the hard drive. Individuals who use the computers at the Internet café cannot download files or save documents to portable storage devices[6] although they could e-mail the documents or print them on a central café printer. The printer was located in a staff-only area and users must request the printed documents from the Internet café staff. There is no evidence that Navrestad e-mailed or printed any of the images.

## Discussion

### Distribution of Child Pornography

We first address whether the evidence is legally sufficient to support a conviction for distribution of child pornography under the CPPA. We review questions of legal sufficiency de novo as questions of law. United States v. Young, 64 M.J. 404, 407 (C.A.A.F. 2007). Legal sufficiency is determined by asking "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United

---

files most recently viewed on the Internet by the end user remain in storage for quick recall." United States v. Grimes, 244 F.3d 375, 379 (5th Cir. 2001).

[6] By "portable storage devices" we refer to any portable computer memory, which include flash drives (such as USB memory sticks), CDs, DVDs and external hard drives. The Internet café computers were configured in such a way that Navrestad and other users could not download files and leave the café with the files.

United States v. Navrestad, No. 07-0199/AR

States v. Dobson, 63 M.J. 1, 21 (C.A.A.F. 2006) (citation omitted).  Utilizing this standard, the issue before the court is whether, under the facts of this case, sending a hyperlink that leads to a Yahoo! Briefcase which contains images of child pornography constitutes distribution of child pornography under the CPPA.

Because Specification 4 alleged a violation of the CPPA, the definitions contained in that chapter control in this case. 18 U.S.C. § 2256(8) defines child pornography as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct[.]"  "Visual depiction" in turn, "includes . . . data stored on computer disk or by electronic means which is capable of conversion into a visual image[.]"  18 U.S.C. § 2256(5).

The issue in this case centers on what was actually distributed when Navrestad sent the hyperlink to "Adam." Navrestad argues he did not distribute child pornography because a hyperlink does not contain "data . . . capable of conversion into a visual image" of child pornography.  He argues that the hyperlink only contained data that is convertible to an address which, in this case, did not even take users directly to the

7

prohibited images.  The Government responds that this court should uphold the lower court because a hyperlink meets the definition of a "visual depiction" set forth in the 18 U.S.C. § 2256(5).

The initial inquiry is whether this hyperlink contains "data stored . . . by electronic means which is capable of conversion into a visual image[.]"  Commencing our inquiry with a basic dictionary definition, we find that "hyperlink" is defined as "an electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or a different document."  Webster's Third New International Dictionary Unabridged (2002), available at http://unabridged.merriam-webster.com.  This definition centers on a hyperlink as an electronic link which provides access.[7]

David Hardinge, a senior systems administrator whose responsibilities include providing technical support for the Internet café at Vilseck, testified for the Government.  During cross-examination, he defined a hyperlink as an address or a "way that you can display a web site," which the recipient can click on to go to the particular site.  Hardinge agreed that a

---

[7] A "link" has been defined as "something in a document like an email, usually highlighted or underlined, that sends users who click on it directly to a new location -- usually an internet address or a program of some sort."  United States v. Hair, 178 F. App'x 879, 882 n.3 (11th Cir. 2006).

8

hyperlink is a shortcut to typing in the website address manually and that clicking on it does not move any documents on the user's computer.[8]  He also agreed that it was an accurate analogy to say that sending a hyperlink is like sending someone an address of a store or of a location of a building.

Hardinge further agreed that sending an individual file as an attachment to an e-mail takes longer than sending a hyperlink because, with an attachment, the user is sending a file that is moving onto someone else's computer.  He admitted that a picture is not sent to the recipient when a hyperlink is sent "[b]ecause a hyperlink is nothing more than . . . just a shortcut to get somewhere."  While trial counsel tried to mitigate Hardinge's statements on re-direct, Hardinge continued to state that a hyperlink is a "direct shortcut to a location."  He did not testify at any point that the hyperlink in this case contained any images or data that were capable of conversion to images.

Unlike an e-mail attachment, the sending of a hyperlink in a chat session does not move a file or document from one location to another.  As such, the data contained in the hyperlink is an electronic address that allows the recipient to direct his browser to the new location without having to type in

---

[8] We note that while clicking on a hyperlink may create a file in the recipient's temporary Internet file folder, clicking this hyperlink does not move images or documents from the sender's computer to the recipient's computer.

United States v. Navrestad, No. 07-0199/AR

the website of that location.  The data contained in the hyperlink is not capable of conversion into any type of visual image.  Rather, the data provides the recipient with the path to a website on a server distinct from Navrestad's own computer.  It is this separate server that contained the visual images of child pornography, not the hyperlink Navrestad sent.  In contrast, a file received as an e-mailed attachment is self-contained and capable of conversion into an image independent of other factors.  The difference between a hyperlink and a file that is sent as an e-mailed attachment is significant because the attached picture or graphics file[9] is a complete image that is just not opened yet.  When that complete image is received, it is housed on the recipient's computer.

Since the hyperlink sent by Navrestad was a path or address to a website and not a file that contains data that is "capable of being converted" into visual images, this case is distinguishable from circuit court cases that involved GIF files.  See, e.g., United States v. Hockings, 129 F.3d 1069 (9th Cir. 1997); United States v. Thomas, 74 F.3d 701 (6th Cir. 1996).  In those cases, the defendants argued that GIF files

---

[9] Picture or graphic file formats are used to place images on the Internet.  The different formats include JPEG/JPG (Joint Photographic Experts Group), GIF (Graphics Interchange Format), and PNG (Portable Network Graphics).  Webopedia:  JPG vs. GIF vs. PNG, http://www.webopedia.com (follow "Did You Know?" hyperlink; then follow the "JPG vs. GIF vs. PNG" hyperlink) (last visited May 7, 2008).

10

were not visual depictions because the file itself was binary code and not images.  Hockings, 129 F.3d at 1070; Thomas, 74 F.3d at 706.  Both courts, however, concluded that GIF files are included in the statutory definition of child pornography because, as the Hockings court stated, "[t]he visual image transported in binary form starts and ends pornographically." 129 F.3d at 1072; see also Thomas, 74 F.3d at 707.  In contrast, the hyperlink here did not start or end as pornography, but was simply a shortcut to a particular web address.[10]

The Government also argued that once the hyperlink was sent, the recipient was "just a click away" from the child pornography images.  Here the Government confuses the manner of the alleged distribution with what is allegedly being distributed.  Navrestad does not dispute that he sent the

---

[10] We have no quarrel with the hyperlink discussion in Universal City Studios v. Corley, which is consistent with the majority opinion.  273 F.3d 429, 455-457 (2d Cir. 2001) ("[H]yperlinks . . . facilitate instantaneous . . . access . . . ."); see United States v. Navrestad, __ M.J. at __ (7-8) (C.A.A.F. 2008) (Effron, C.J., joined by Stucky, J., dissenting).  In relying on Corley, however, the dissent completely ignores the language of 18 U.S.C. § 2256(5) and (8) which specifically prohibit the distribution of data which is "capable of conversion into" child pornography.  The language in Corley upon which the dissent relies stands for the limited proposition that a hyperlink "facilitates" access to another Internet site.  Corley, a civil case, does not suggest, let alone hold, that a hyperlink sends or distributes data that "is capable of conversion," into child pornography, as the criminal statute in this case requires for the offense of distribution.  While the language relied upon by the dissent may be pertinent in a case in which an accused is charged with aiding and abetting the distribution of child pornography that is not the offense at issue in this case.

United States v. Navrestad, No. 07-0199/AR

hyperlink to "Adam."  His position is that the hyperlink did not contain child pornography as that term is defined in the CPPA and therefore cannot constitute the distribution of child pornography.  We agree.  However, even if the number of clicks were a factor in determining whether the hyperlink contained child pornography, the hyperlink in this case did not take the recipient directly to any child pornography images.  When McLaughlin clicked on the link, he was taken to a directory of files and had to click on an individual file name in order to view the image.

We note that the United States Court of Appeals for the Eleventh Circuit has addressed a similar issue in an unpublished case where the defendant sent a hyperlink to his own Briefcase which contained child pornography.  United States v. Hair, 178 F. App'x 879 (11th Cir. 2006).  That court determined the defendant was properly convicted of attempting to transport, and transporting child pornography in violation of 18 U.S.C. § 2252A(1).  Hair, 178 F. App'x at 885.  Hair is distinguishable from the instant case on several grounds:  Hair was charged with both attempted transportation and transportation of child pornography, id. at 881; Navrestad was not charged with attempted distribution but only distribution of child pornography; the government in Hair also presented the transportation charge under an aiding and abetting theory,

12

arguing that by sending the hyperlink, Hair had assisted Yahoo!
in transporting child pornography, id. at 884; the Government
did not present an aiding and abetting theory on Navrestad's
distribution charge;[11] the hyperlink Hair sent was to his own
Briefcase over which he exercised dominion and control, id. at
883; the hyperlink Navrestad sent was to a public Briefcase over
which he exercised no dominion or control.[12]

We hold that under the facts of this case, the sending of a
hyperlink to a Yahoo! Briefcase does not constitute the
distribution of "child pornography" as that term is defined in
18 U.S.C. § 2256(5) and (8).

Possession of Child Pornography

We next address whether the evidence is legally sufficient
to support a conviction of possession of child pornography under
Article 134, UCMJ, clause 1 or 2. Both parties point to the
definition of "possess" contained in the Explanation to Article
112a, UCMJ, 10 U.S.C. § 912a (2000), which deals with the
possession of controlled substances:

---

[11] An appellate court may not affirm a conviction on a theory not
presented to the trier of fact. Chiarella v. United States, 445
U.S. 222, 236-37 (1980); United States v. Riley, 50 M.J. 410,
415 (C.A.A.F. 1999); United States v. Standifer, 40 M.J. 440,
445 (C.M.A. 1994). "To do so 'offends the most basic notions of
due process,' because it violates an accused's 'right to be
heard on the specific charges of which he [or she] is accused.'"
United States v. Riley, 50 M.J. 410, 415 (C.A.A.F. 1999)
(quoting Dunn v. United States, 442 U.S. 100, 106 (1979)).

> "Possess" means to exercise control of something. Possession may be direct physical custody like holding an item is [sic] one's hand, or it may be constructive, as in the case of a person who hides an item in a locker or car to which that person may return to retrieve it. Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others. It is possible, however, for more than one person to possess an item simultaneously, as when several people share control of an item.

MCM pt. IV, para. 37.c.(2). This court has also evaluated constructive possession in the drug context as having "dominion or control" over the contraband. Young, 64 M.J. at 407. The United States Court of Appeals for the Tenth Circuit has applied that same definition to possession of child pornography, noting the absence of a definition in the CPPA. United States v. Tucker, 305 F.3d 1193, 1204 (10th Cir. 2002).

While Navrestad concedes that he viewed the images on the public computer monitor, he argues that mere viewing does not constitute sufficient control to constitute "possession." In support of this position he argues: he could not download the images from the public computer to a portable storage device; he did not have access to any of the files stored on the computer's hard drive; he had no control over the Yahoo! Briefcase where the images were located; and while he could have printed or e-mailed the images, there is no evidence that he did

---

[12] The Army Criminal Investigation Command found no images of child pornography in Navrestad's own Yahoo! Briefcase over which he did exercise control.

so.  The Government argues that Navrestad's actions are sufficient to constitute possession:  he admittedly sought out the images on the Internet; he viewed them on the computer monitor; he had the ability to copy, print or e-mail the images to others; and, he sent a hyperlink to the Yahoo! Briefcase that contained the images to "Adam."

The definition in MCM pt. IV, para. 37.c.(2), provides that "[p]osses[sion] means to exercise control of something." Navrestad viewed the images in the Yahoo! Briefcase, but his actions with the images went no further.  He could not access the computer's hard drive where the Briefcase images were automatically saved nor could he download the images to a portable storage device.  There is no evidence that he e-mailed, printed or purchased copies of the images or that he was even aware that he could take any of these actions.  As to what Navrestad might have been able to do with the images, "possession" is not based upon unknown contingencies but "must be knowing and conscious."  MCM pt. IV, para. 37.c.(2).

While MCM pt. IV, para. 37.c.(2), provides that "[p]ossession inherently includes the power or authority to preclude control by others[,]" Navrestad did not have the ability to control who else would have access to the contents of the Briefcases he was viewing.  Finally, as we have held that sending a hyperlink during a chat session to a Yahoo! Briefcase

15

that contains child pornography does not constitute "distribution" of child pornography, the fact that Navrestad sent the hyperlink does not reflect "dominion" or "control" over the child pornography images in the Briefcase. In this context, viewing alone does not constitute "control" as that term is used in MCM pt. IV, para. 37.c.(2).

The Government relies on several federal circuit court decisions to support its argument that Navrestad's actions in this case constituted sufficient dominion and control over the images to constitute possession. See United States v. Romm, 455 F.3d 990 (9th Cir. 2006); Tucker, 305 F.3d 1193. These cases involve "possession" of child pornography under the CPPA. The pivotal distinction between those cases and the instant case is that both the circuit court cases involve images of child pornography that had been saved to "temporary internet files" of the defendant's personal computers and the defendants in both cases knew that the images were stored on their computers and had ready access to the files. Romm, 455 F.3d at 1001; Tucker, 305 F.3d at 1205. In this case the Government has agreed that while the Internet café computer saved the Yahoo! Briefcase websites to a temporary Internet file, those files were not accessible by Navrestad. In addition, there was no evidence at trial that Navrestad had any knowledge that the images were even being saved on the café computer.

16

United States v. Navrestad, No. 07-0199/AR

We hold that under the facts of this case, Navrestad lacked the dominion and control necessary to constitute "possession" of the child pornographic images.

Conclusion

As Navrestad's actions are legally insufficient to support a conviction for possession or distribution of child pornography, the findings of the United States Army Court of Criminal Appeals as to Specifications 4 and 5 are set aside.[13] The remaining findings are affirmed.  The record of trial is returned to the Judge Advocate General of the Army for remand to the United States Army Court of Criminal Appeals for sentence reassessment.

---

[13] There is no question that sexual crimes against minors and the area of child pornography encompass a variety of despicable crimes for which society has justifiably proscribed serious penalties.  We should not, however, allow our disgust for [Navrestad's] actions color our judgment in evaluating the legal sufficiency of the charges.

United States v. Hays, 62 M.J. 158, 170 (C.A.A.F. 2005) (Erdmann, J., concurring in part and dissenting in part).

United States v. Navrestad, No. 07-0199/AR

EFFRON, Chief Judge, with whom STUCKY, Judge, joins (dissenting):

Appellant accessed child pornography on the Internet, personally selected specific sets of images for transmission to a designated recipient, and used a hyperlink to transmit the images to the recipient.  The majority opinion concludes that the record does not provide a legally sufficient basis for sustaining Appellant's convictions for distribution and possession of child pornography.  For the reasons set forth below, I respectfully dissent.

I.  APPELLANT'S POSSESSION AND DISTRIBUTION OF
CHILD PORNOGRAPHY ON THE INTERNET

Appellant's experience with child pornography on the Internet commenced more than two years prior to the events at issue in the present appeal.  He regularly accessed child pornography on the Internet, usually about once a week.

Appellant, who did not own a computer, had an account at an Internet cafe located on a military installation in Vilseck, Germany.  During one of his on-line sessions at the Internet cafe, Appellant accessed a website known as a "Yahoo! chat room" that specialized in conversations involving persons purporting to be sexually active, underage males.  The chat room provided an opportunity for a person to engage in a one-on-one written

communication with another individual that would not be visible to others.

Appellant initiated a communication with an individual whose profile indicated that he was a fifteen-year-old boy named "Adam" who lived in New Hampshire. Appellant, who engaged in a discussion of sexual matters with "Adam," offered to send pictures if "Adam" would engage in "phone sex." Through the chat room, Appellant transmitted a hyperlink to "Adam" for an Internet site known as a "Yahoo! Briefcase." "Adam," who was a New Hampshire police officer, clicked on the briefcase, which contained eight sexually explicit pictures.

Appellant and "Adam" had added one another to their "buddy lists," which provided an on-screen indication as to whether named persons were available for communicating in the chat room. Several days later, Appellant returned to the Internet cafe, logged onto a computer, accessed the chat room, and initiated communication with "Adam." In response to Appellant's request to engage in phone sex, "Adam" asked Appellant to send pictures. After further chat room conversation of a sexual nature, Appellant sent "Adam" two new hyperlinks for locations containing sexually explicit pictures. He also transmitted the hyperlink for the eight pictures he had shared during their first online chat.

The following week, Appellant initiated a third online chat with "Adam." Once again, the conversation focused on sexual matters, including Appellant's sexual interest in "Adam's" younger brother, a fictitious person whom Appellant believed to be a real twelve-year-old boy. In response to "Adam's" request for pictures of "guys 10-14," Appellant accessed a Yahoo! Briefcase site that contained child pornography. After he viewed the pictures to confirm that they contained child pornography, he sent the hyperlink for those sites to "Adam" via a chat room conversation. "Adam" promptly clicked on the hyperlink, which revealed fifty-two pictures, the majority of which depicted children under the age of eighteen engaged in sexual acts and exhibition of genitalia.

The undercover detective, who posed as "Adam," testified that the pictures appeared on his computer as soon as he clicked on the hyperlink and selected the individual photographs listed as image files in the Yahoo! Briefcase. The detective explained that the hyperlink provides a superior method of sending pictures, as compared to sending files containing individual pictures, noting that "you can send hundreds of pictures with a single transmission, whereas if you actually send the individual files, it's going to take more time, and they have to be sent one at a time."

## II.  LEGAL SUFFICIENCY OF THE EVIDENCE

The present appeal concerns Appellant's convictions for distributing and possessing child pornography, as modified and affirmed by the Court of Criminal Appeals.  The standard for legal sufficiency involves a very low threshold to sustain a conviction.  See Jackson v. Virginia, 443 U.S. 307, 318 (1979).  As noted in the majority opinion, the standard is "'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'"  United States v. Navrestad, __ M.J. __ (6) (C.A.A.F. 2008) (quoting United States v. Dobson, 63 M.J. 1, 21 (C.A.A.F. 2006)).

### A.  Distribution

As affirmed by the Court of Criminal Appeals, Appellant was convicted of distributing child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000) (proscribing conduct that is service discrediting or prejudicial to good order and discipline).  Assuming that the distribution charge incorporated the terms of 18 U.S.C. § 2252A(a)(2) (2000), see Navrestad, __ M.J. at __ (3 n.3), Appellant must demonstrate on appeal that the evidence was insufficient to convince a reasonable factfinder that he knowingly distributed "child pornography" or "material that contain[ed] child pornography," and that he did so "by any means, including by computer."  The term "child

4

pornography," which is not limited to images or pictures, includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image." 18 U.S.C. § 2256(5), (8) (2000).

In the present appeal, Appellant does not contest that he was familiar with the procedures for accessing child pornography on the Internet, that he knowingly accessed several sites on the Internet in response to another person's request to receive child pornography, or that he knowingly selected specific images for viewing by the recipient. Further, he does not contest that he knowingly transmitted hyperlinks to the recipient in response to the request for child pornography, or that he knew that his action in transmitting the hyperlinks would provide the recipient with near-instantaneous views of the specific child pornography images selected by Appellant.

Appellant's claim on appeal is that the evidence is insufficient as a matter of law because transmission of a hyperlink, a path to a website, does not meet the statutory criteria for the offense of distribution. According to Appellant, the hyperlink in the present case was not capable of conversion into child pornography because the recipient could not access the pornography through a one-step click on the hyperlink. Appellant relies on the fact that the recipient of the hyperlink had to take two steps to view the pornography:

first, click on the briefcase to access the briefcase, and second, click on a specific file in the briefcase to view the child pornography.

The United States Court of Appeals for the Second Circuit, in Universal City Studios, Inc. v. Corley, 273 F.3d 429, 456 (2d Cir. 2001), encountered a similar objection when addressing the issue of improper trafficking of copyrighted material under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. §§ 1201-1332 (Supp. V 1999). In Corley, the district court issued an injunction prohibiting a company from posting software on its website that facilitated improper access to copyrighted materials through pirating software. Corley, 273 F. 3d at 434-35. The company also posted hyperlinks to other websites where the pirating software could be found. Id.

In affirming the injunction against a variety of challenges, including First Amendment considerations, the Second Circuit offered the following description of the manner in which a hyperlink permits distribution of restricted information:

> A hyperlink is a cross-reference (in a distinctive font or color) appearing on one web page that, when activated by the point-and-click of a mouse, brings onto the computer screen another web page. The hyperlink can appear on a screen (window) as text, such as the Internet address ("URL") of the web page being called up or a word or phrase that identifies the web page to be called up, for example, "DeCSS web site." Or the hyperlink can appear as an image, for example, an icon depicting a person sitting at a computer watching a DVD movie and text stating "click

6

> here to access DeCSS and see DVD movies for free!"
> The code for the web page containing the hyperlink
> includes a computer instruction that associates the
> link with the URL of the web page to be accessed, such
> that clicking on the hyperlink instructs the computer
> to enter the URL of the desired web page and thereby
> access that page.  With a hyperlink on a web page, the
> linked web site is just one click away.

Id. at 455.

The Second Circuit agreed with the district court's conclusion that the DMCA, including statutory prohibitions against trafficking, should apply to hyperlinks because of the "functional capability" of the hyperlink even though the hyperlink was merely a path rather than an actual version of the pirating software.  Id. at 456.  Although the hyperlink did not literally contain the pirating software, the Second Circuit observed, "[a hyperlink] conveys information, the Internet address of the linked web page, and has the functional capacity to bring the content of the linked web page to the user's computer screen."  Id.

As in the present case, the appellants in Corley contended that a hyperlink should be treated as merely publication of an address at which a third party might obtain prohibited material. Id.  The Second Circuit rejected the analogy, stating:

> Appellants ignore the reality of the functional
> capacity of . . . hyperlinks to facilitate
> instantaneous unauthorized access to copyrighted
> materials by anyone anywhere in the world. . . .
> [T]he injunction's linking prohibition validly

7

> regulates the Appellant's opportunity instantly to
> enable anyone anywhere to gain unauthorized access to
> copyrighted movies on DVDs.

Id. at 457.

The Second Circuit emphasized that hyperlinks take one "'almost instantaneously to the desired destination.'" Id. at 456. Unlike a website address printed in the newspaper describing where to find child pornography, a hyperlink provides a means to transmit the content of the website to the user's computer. The recipient's ability to access and use images transmitted by hyperlink is functionally indistinguishable from the ability to access and use images transmitted as individually saved files.

In that context, the Second Circuit also rejected the company's suggestion that providing a hyperlink to a website should be analogized to a newspaper publishing the address of a bookstore that carries obscene materials. Id. at 456-57. Focusing on the instantaneous distribution that occurs when a website is accessed via a hyperlink:

> Like many analogies posited to illuminate legal
> issues, the bookstore analogy is helpful primarily in
> identifying characteristics that distinguish it from
> the context of the pending dispute. If a bookstore
> proprietor is knowingly selling obscene materials, the
> evil of distributing such materials can be prevented
> by injunctive relief against the unlawful distribution
> (and similar distribution by others can be deterred by
> punishment of the distributor). And if others publish
> the location of the bookstore, preventive relief
> against a distributor can be effective before any

> significant distribution of the prohibited materials
> has occurred.  The digital world, however, creates a
> very different problem.  If obscene materials are
> posted on one web site and other sites post hyperlinks
> to the first site, the materials are available for
> instantaneous worldwide distribution before any
> preventive measures can be effectively taken.

Id. at 457.

The Second Circuit's functional treatment of distribution of information via hyperlinks in the context of the highly sensitive First Amendment considerations applicable to copyright litigation is consistent with the testimony developed during Appellant's trial.  Witnesses for the Government established that a hyperlink provided an efficient means of distributing photographic images.  One witness testified that although images can be distributed numerous ways, use of a hyperlink is "streamlined."  One click on the hyperlink brought the recipient directly to the website, along with access to any files and digital images located at that website.  Through the hyperlink, Appellant distributed child pornography by electronic means capable of conversion into images within the meaning of the statute, 10 U.S.C. §§ 2256(5), (8), and accomplished his distribution in a manner far more expeditious and efficient than if he had done so through traditional mail or by attaching individual files to an e-mail.

There may well be situations in which the use of a hyperlink falls outside of the proscriptions of the CPPA.  The

present case, however, does not involve unknowing or inadvertent transmission, nor does it concern communications arguably protected by the First Amendment or other applicable law. Appellant used a hyperlink to send "Adam" fifty-two images of child pornography -- images that the recipient could access with a simple click on the hyperlink, followed by a click on the individual images. Law enforcement officials testified that the images included photographs of actual children who had been sexually abused and photographed by adults. Accordingly, the evidence was legally sufficient to sustain Appellant's conviction for distribution of child pornography.

## B. Possession

Appellant contends that he did not possess child pornography because possession entails more than viewing or storage on a temporary Internet file. Assuming that mere viewing through a medium in which images are stored on a temporary file does not amount to possession, the present case is not so limited. Appellant knowingly accessed a child pornography website for purposes of transmitting images to another person. After he accessed the website displaying the images, he used hyperlinks to capture specific images, and transmitted the images via the hyperlinks to another party. The fact that others may have had the ability to access the website as well does not diminish the fact that Appellant exercised

sufficient dominion and control over the images to select personally the pictures he wished to transmit, and to take the necessary steps to distribute the pictures to a specific recipient selected by Appellant without interference or control by another person.  In that context, the record contains ample evidence under which a reasonable factfinder could conclude that he possessed child pornography in a manner that was either service discrediting or prejudicial to good order and discipline under Article 134, UCMJ.