# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 39311

_____

### UNITED STATES
*Appellee*

**v.**

### Tony A. BAKER
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 13 November 2018

_____

*Military Judge:* Charles E. Wiedie (arraignment); Patricia A. Gruen (pretrial Article 39(a), UCMJ, session); Brendon K. Tukey (trial).

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 24 March 2017 by GCM convened at Osan Air Base, Republic of Korea.

*For Appellant:* Captain Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire; Justin P. Kenyon, Legal Extern.[1]

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

_____

---

[1] Mr. Kenyon was a law student extern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of violating a lawful general regulation and one specification of wrongful possession of child pornography in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, total forfeiture of pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence with the exception of the term of confinement, which he reduced to six months.

On appeal, Appellant challenges the legal and factual sufficiency of both specifications of which he was convicted. In addition, we address a facially un-reasonable delay in the post-trial processing of Appellant's case. We find no relief is warranted and we affirm the findings and sentence.

## I. BACKGROUND

In June 2014, an agent of the Air Force Office of Special Investigations (AFOSI) stationed at Kadena Air Base (AB), Okinawa, Japan, detected a number of files containing suspected child pornography being downloaded to a particular Internet Protocol (IP) address located on Okinawa. In coordination with the Naval Criminal Investigative Service, AFOSI sought the identity of the user of that IP address from the off-base Internet service provider. In March 2015, AFOSI finally learned the user of that address had been Appellant, who had since transferred to Osan AB, Republic of Korea, in January 2015.

Agents of the Osan AB AFOSI detachment interviewed Appellant on 27 March 2015. Appellant acknowledged that when he was stationed at Kadena AB he used a peer-to-peer file-sharing program known as "eMule" to obtain and share files over the Internet. Through this program he collected pornographic and non-pornographic materials; in particular, he collected large

---

[2] The military judge found Appellant not guilty of one specification of wrongfully receiving child pornography, one specification of wrongfully viewing child pornography, and one specification of possessing obscene visual representations of the sexual abuse of children, all in violation of Article 134, UCMJ, 10 U.S.C. § 934.

amounts of material related to Japanese animation and comics known as anime and manga. Appellant described for the agents how he would conduct searches on eMule based on certain terms using one particular laptop computer. He would screen video files he received this way by watching five or ten seconds of the video. If he did not want to keep the file, he would delete it. If Appellant wanted to keep the file, he would save it to a folder. Appellant estimated that he deleted 99 percent of the files he downloaded through eMule in this way.[3]

Appellant admitted he possessed animated and drawn images of "cartoon" pornography, including animated videos depicting children "having sex," as well as "real" pornography depicting actual adult humans. However, he persistently denied intentionally or knowingly downloading or possessing "real" child pornography. At different points in the interview, Appellant acknowledged that he either "probably" or was "sure" he unintentionally received child pornography in mass downloads from eMule, and he "maybe" accidentally saw files containing child pornography perhaps a dozen times, although he could not recall any specific details or actual sexual acts involving children. However, he denied keeping any such files. Appellant consented to the search of his electronic devices, saying the agents "should not" find any child pornography on them.

AFOSI agents searched Appellant's dormitory room and seized a number of items, notably a laptop computer they labeled Tag 15, a data card they labeled Tag 4, and another laptop they labeled Tag 10. Subsequent analysis by the Defense Computer Forensics Laboratory (DCFL) indicated the computer labeled Tag 15 had its operating system installed in January or February 2013 and the eMule program installed in March 2013. JP, the DCFL forensic examiner who analyzed these items, testified at trial as an expert in forensic computer examination. According to JP, analysis indicated a pattern whereby files were downloaded onto the laptop labeled Tag 15, placed on the data card labeled Tag 4, and then transferred from Tag 4 to the second laptop labeled Tag 10, which did not have eMule installed. JP provided the following explanation of how eMule works:

---

[3] We note that, in place of Prosecution Exhibit 6, a compact disc containing a video recording of Appellant's interview with AFOSI, the original record of trial includes a piece of paper stating "Prosecution Exhibit 6 . . . can be located in the original Record of Trial." Nevertheless, we are confident the record is complete for our review as this compact disc is included as an attachment to Appellate Exhibit X.

A [JP]: [eMule is] a program where computers can share files with each other without the need for a centralized server. So, files can be transferred from many people at once to one computer, you can download files off—usually a lot faster than you can from, say a direct server download.

Q [Trial Counsel]: And so, can you just describe, sort of, generally, how a user would operate eMule?

A: Sure. You would open up the application, connect to one of the eMule servers, type in a search term, and see what you're looking for. Then you could download the files from those search results.

Q: And you said that's pulling from—where do those files pull from?

A: From multiple people.

Q: And how does that work? They're all—all the other people are connected to that server as well?

A: Yes.

Q: . . . . How does the system operate to get that file onto your computer?

A: So, what it will do is it will go out to see if there's 20 or 30 other users that have that file and are willing to share it. And if they're willing to share it, it'll download a partial file, which is a .part file in eMule, into the temporary directory. Once enough pieces are downloaded from that part [sic] file a user is able to preview that file. When a file is completely downloaded from all the other people that are sharing it, it will recompile the video, or picture, or whatever and move it to a completed directory. And in this case it was the incoming directory.

JP further explained that, in its default setting, eMule saved a history of the search terms used in the program. However, in the case of Tag 15 this feature had been intentionally switched off so that the search history was not recorded or recoverable.

JP also explained the difference between "allocated space" and "unallocated space" on digital media. According to JP, "[a]llocated space is a space on the hard drive where it's user accessible data. . . . And unallocated space is an area of the hard drive where the data is available to be written to and can sometimes contain previously deleted data." In general, an ordinary user does not have access to data in "unallocated space" without specialized tools.

DCFL analysis recovered over 100 files, or parts or remnants of files, containing images of child pornography from Tags 15, 4, and 10. In particular, DCFL recovered ten .part video files depicting apparent child pornography from the eMule temporary directory on Tag 15. JP testified that, although these were .part files and not complete, they were stored in allocated space in the eMule temporary folder and were playable and accessible by Appellant. These files formed the basis of the specification alleging Appellant knowingly and wrongfully received child pornography.

DCFL also recovered seven images of apparent child pornography from the "thumbcache database" on Tag 10. JP explained a "thumbcache is a repository on a Windows computer that stores smaller images of a larger image that was displayed on the screen at some point." JP explained that although these thumbcache images were contained in allocated space, they would not have been accessible to an ordinary user without "specialized tools." However, the presence of these images in the thumbcache indicated these images had previously resided elsewhere in allocated space. These seven images were very similar to files located in a thumbcache on Tag 15. These seven images formed the basis of the specification alleging Appellant knowingly and wrongfully viewed child pornography.

In addition, at trial the Government introduced 54 files (including 21 duplicates) from Tag 4, 13 files from Tag 10, and 8 files from Tag 15 depicting apparent child pornography. These files formed the basis of the specification alleging Appellant knowingly and wrongfully possessed child pornography. JP testified these files were recovered from unallocated space on each device, indicating that they had been separately deleted from each individual device. Included in these files were a small number of visually similar files recovered from each of the devices. In other words, in a few cases the same images were found in unallocated space on all three of the devices.

At trial, the Government also introduced 28 files containing animated or drawn images in support of the specification alleging Appellant knowingly possessed obscene visual representations of the sexual abuse of children.

At the Government's request, the military judge took judicial notice of United States Forces Korea (USFK) Regulation 190–41, "which state[d] that personnel will not import, or attempt to import, into the Republic of Korea items that 'disturb public morals' such as pornography, defined as pictorial matter devoted to portrayal of sexual acts, oral, anal, or coital in any manner . . . and any media containing sexually explicit depictions of children."

The military judge found Appellant not guilty of the specifications alleging wrongfully receiving and viewing child pornography and knowingly possessing obscene visual materials. The military judge found Appellant guilty of

wrongful possession of child pornography and of violating a lawful general regulation by wrongfully importing pornography into the Republic of Korea. At the Defense's request, the military judge entered special findings with respect to the possession of child pornography. The military judge identified 29 files from Tag 4, 12 files from Tag 10, and 7 files from Tag 15 that he found to constitute child pornography. The military judge further stated:

> The court finds that the accused knowingly and wrongfully possessed these child pornography files as charged. The accused had no legal justification or excuse to possess the files. In regards, to the facts accordingly, I find that the accused knowingly possessed the items mentioned above and the court finds that the evidence established, beyond reasonable doubt, that these files of child pornography were intentionally moved by the accused from the Toshiba laptop, known as Tag 15, to the memory device, known as Tag 4, and from that device to the Toshiba laptop, known as Tag 10. This, in concert with all of the other direct and circumstantial evidence submitted by trial counsel demonstrated the accused's dominion and control of the child pornography, and was consistent with his admissions to AFOSI that he would first download files to one computer, and then transfer those files he wished to keep on to another computer.

> While the fact that these files were found in unallocated space, within each of Tag 15, Tag 4, and Tag 10 shows that the accused eventually deleted these files. The fact of their movement, by the accused from device, to device, to device demonstrated beyond a reasonable doubt that the accused did not promptly and in good faith, destroy or report the possession of the files to law enforcement.

## II. Discussion

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfind-

er could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humperys*, 57 M.J. 83, 94 (C.A.A.F. 2002). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *Washington*, 57 M.J. at 399 (citation omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). Although we "cannot find as fact any allegations of which the accused was found not guilty at trial," we "may consider facts underlying an acquitted charge in considering whether the facts support a separate charge." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

### 2. Analysis

#### a. Wrongful Possession of Child Pornography

Appellant contends his conviction for knowingly and wrongfully possessing child pornography is both legally and factually insufficient. We disagree.

As articulated by the military judge, the elements of the offense of wrongful possession of child pornography in violation of Article 134, UCMJ, as charged in this case include:

> (1) that within Japan and the Republic of Korea between on or about 22 March 2013 and on or about 28 March 2015, the accused knowingly and wrongfully possessed child pornography, to wit: one or more visual depictions of a minor engaging in sexual[ly] explicit conduct; and

> (2) that under the circumstances the conduct of the accused was of a nature to bring discredit upon the armed forces.

The United States Court of Appeals for the Armed Forces (CAAF) has interpreted "possession" in this context to have the same definition as in the wrongful possession of controlled substances in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. *United States v. Navrestad*, 66 M.J. 262, 267 (C.A.A.F. 2008). The Manual for Courts-Martial defines possession for purposes of Article 112a as follows, in pertinent part:

> "Possess" means to exercise control of something. Possession may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who hides an item in a locker or car to which that person may return to retrieve it. Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others.

*Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶ 37.c.(2).

As the military judge found, the presence of images of child pornography on all three devices—Tags 15, 4, and 10—was compelling evidence that Appellant knowingly possessed child pornography. Significantly, Appellant concedes four particular images were recovered from unallocated space on all three devices. JP testified that files must have been in allocated space and accessible to the user to be moved between devices. Coupled with the other evidence in the case, including Appellant's own description of how he screened files he downloaded with eMule and saved only those files he intended to keep, the presence of images on multiple devices leads to the conclusion that Appellant saved the files onto the eMule-equipped computer labeled Tag 15, transferred them to the data card labeled Tag 4, and then transferred them from Tag 4 onto the computer labeled Tag 10. There was no evidence or reason to conclude that anyone other than Appellant used these devices. Accordingly, the evidence indicates Appellant was aware of these files, exercised control over them, and took steps to keep them before deciding to delete them from each device at some later point in time.

Appellant cites a number of appellate court decisions in cases that are all distinguishable from his own. In *Navrestad*, the CAAF held that merely viewing images of child pornography on a public computer was legally insufficient to support a conviction for possession of child pornography where Navrestad could not access the hard drive or save the images onto a portable storage device. 66 M.J. at 267. In addition, the CAAF noted there was no evidence that Navrestad emailed, printed, or purchased copies of the images "or that he was even aware that he could take any of these actions." *Id.* Under these circumstances, the CAAF found Navrestad did not "exercise control" over the images and therefore did not possess them. *Id.* at 267–68. However, Appellant's interaction with the images of child pornography in this case was of a

completely different character. The evidence indicates Appellant obtained the images on his own computer; transferred them to his data card; transferred them again to another computer he owned; and later deleted the files from each of the devices. Thus, Appellant clearly exercised control over, and possessed, these images.

Appellant's citations to federal circuit court decisions are similarly unavailing. In each of these cases, the court noted the Government failed to present evidence that the appellant was aware of the existence of files containing child pornography recovered from unallocated space on his device. *See United States v. Flyer*, 633 F.3d 911, 918–19 (9th Cir. 2011); *United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011); *United States v. Kuchinski*, 469 F.3d 843, 862 (9th Cir. 2006). Again, the evidence in Appellant's case indicates he was aware of the images and exercised control by saving and re-saving them onto different devices. Appellant's case is therefore more similar to the convictions that were upheld in *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006), and *United States v. Tucker*, 305 F.3d 1193, 1204–05 (10th Cir. 2002), where the appellants knew the images were being saved to cache files from which they could be copied, printed, or emailed to others.

We may also distinguish two unpublished cases from the courts of criminal appeals. In *United States v. Yohe*, No. ACM 37950 (recon), 2015 CCA LEXIS 380, at *16–18 (A.F. Ct. Crim. App. 3 Sep. 2015) (unpub. op.), we found the evidence legally and factually insufficient to support Yohe's conviction with respect to 16 thumbnail images of child pornography recovered from his computer's backup system or temporary files. *Id.* Under the particular circumstances of that case, we found insufficient evidence that Yohe had viewed the original images from which the thumbnails derived, and we noted that he could not access the thumbnails themselves without specialized tools or expertise. *Id.* In Appellant's case, by contrast, the evidence indicates Appellant was not only aware of images of child pornography, but saved and re-saved them to different devices and later deleted them from each device. Finally, our sister court's decision in *United States v. Schempp*, No. ARMY 20140313, 2016 CCA LEXIS 147, at *5–11 (A. Ct. Crim. App. 26 Feb. 2016) (unpub. op.), turned largely on the Government's failure to prove Schempp knowingly possessed images of child pornography recovered from unallocated space on or about the specific day alleged in the specification, where the evidence indicated the files had been deleted from allocated space two and a half years earlier. No such issue exists in Appellant's case where the dates alleged in the possession specification effectively encompass the entire period from when eMule was installed on Tag 15 until AFOSI seized the devices.

Appellant contrasts the absence of child pornography from allocated space on his devices with his extensive and carefully organized collection of files

related to anime and manga. He argues he had no reason to suspect he was under investigation for child pornography prior to his AFOSI interview and therefore "had no reason to delete or attempt to hide child pornography. Rather, if he truly was interested in child pornography, he would have kept the files in a place where he still had access to them—on allocated space." We are not persuaded. Appellant's statements during his AFOSI interview make clear that he appreciated a significant distinction between pornography involving "real" children and pornography depicting "cartoon" children, which he freely admitted to possessing. He may have rightly feared the legal consequences of possessing the former, and therefore deleted those files after initially taking steps to keep them, where he did not have the same concerns with the latter. The evidence indicates as much.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," we find the evidence was legally sufficient to support Appellant's conviction. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of knowingly and wrongfully possessing child pornography is therefore both legally and factually sufficient.

### b. Violation of a Lawful General Regulation

The military judge articulated the elements of the offense of failure to obey a lawful general regulation in violation of Article 92, UCMJ, as follows:

> (1) that there was in existence a certain lawful general regulation the [USFK] Regulation 190-41, . . . which states that personnel will not import, or attempt to import, into the Republic of Korea items that "disturb public morals" such as pornography, defined as pictorial matter devoted to portrayal of sexual acts, oral, anal, or coital in any manner including homosexuality or those with an animal, and any media containing sexually explicit depictions of children;

> (2) that the accused had a duty to obey such regulation; and

> (3) that at or near Osan Air Base, Republic of Korea, on or about 10 January 2015, the accused violated this lawful regulation by importing pornography into the Republic of Korea.

Appellant contends his conviction for violating a lawful general regulation is legally and factually insufficient for multiple reasons. First, he contends the military judge incorrectly assumed there was no mens rea requirement for this offense. *See generally United States v. Haverty*, 76 M.J. 199, 203–04 (C.A.A.F. 2017) ("Courts must seek to discern any legislative intent about a

mens rea requirement in a statute that is otherwise silent.") Second, Appellant notes that all of the child pornography files Appellant was convicted of possessing were recovered from either unallocated space or caches in allocated space that were not accessible to a user without specialized tools. Third, Appellant asserts the files obtained from unallocated space and thumbcaches lacked the type of "metadata" that would indicate when these files, or the original files in allocated space they were derived from, were saved onto the devices, accessed, or deleted.[4] Therefore, according to Appellant, the Government could not prove these files were accessible to and possessed by Appellant at the point he imported these devices into Korea.

It is true that the military judge did not specifically address a mens rea requirement when he recited the elements of the offense. It is also true that the Government did not prove at what point during the charged timeframe the files of child pornography existed in allocated space and were accessible to Appellant. If the Government had to rely only on these images to support Appellant's conviction for violating Article 92, UCMJ, Appellant's argument would have greater force.

However, such is not the case. As a preliminary matter, because the Defense did not object to the military judge's recitation of the elements of the offense, we review Appellant's assertion of error with regard to the mens rea requirement for plain error. *See United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018); *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). In a plain error analysis, the appellant "bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *Robinson*, 77 M.J. at 299 (citing *United States v. Davis*, 76 M.J. 224, 230 (C.A.A.F. 2017)). The instant case is analogous to *Robinson*, in that it is unnecessary for us to determine the precise mens rea requirement;[5] even if we assume *arguendo* Appellant

---

[4] This was not true of the .part video files found in allocated space on the eMule temporary folder in Tag 15 and charged under the specification alleging wrongful receipt of child pornography. JP testified those files were downloaded in July 2014 while Appellant was stationed at Kadena AB. However, because the military judge found Appellant not guilty of that specification, we decline to rely on those files for our decision.

[5] Here we are concerned with Appellant's mens rea with regard to the facts that constitute a violation of the order—that is, the importation of pornography into Korea—rather than his awareness of the specific prohibitions of USFK Regulation 190–41. *See MCM*, pt. IV, ¶ 16.c.(1)(d) ("Knowledge of a general order or regulation need not be alleged or proved, as knowledge is not an element of this offense and a lack of knowledge does not constitute a defense.").

was required to know that he was importing pornography into the Republic of Korea, the evidence demonstrates his knowledge beyond a reasonable doubt. Therefore, Appellant cannot demonstrate material prejudice to his substantial rights, and he is not entitled to relief.

Apart from the files of child pornography depicting "real" children, the Government introduced dozens of animated or drawn images of "cartoon" children engaged in sexual acts, including *inter alia* anal and vaginal penetration. These images were obtained from Appellant's extensive collection of such files catalogued in detailed folders in allocated space on his devices. In his AFOSI interview, Appellant plainly admitted to having "cartoons" of "children having sex." Appellant told AFOSI his interest in anime was longstanding; for example, he had been doing podcast reviews of anime since 2011. Dr. TD, who testified for the Defense as an expert on the impact of anime and manga on English-speaking cultures, described Appellant's knowledge of the subject as "extensive" and "near academic and encyclopedic." We are satisfied the evidence demonstrates beyond a reasonable doubt Appellant knowingly imported sexually-explicit "cartoon" depictions of sexual acts into Korea on his electronic devices.

We are equally satisfied these images were "pictorial matter devoted to portrayal of sexual acts" and therefore constituted "pornography" as defined in USFK Regulation 190–41. Appellant argues these files cannot support the conviction because they are not pornography. He points to Dr. TD's testimony that "anime is prevalent in Asia and frequently has sexual depictions" and thus would not "disturb public morals." We are not persuaded. Dr. TD did not testify that images such as those introduced at trial were "prevalent" across Asian culture or that they would not disturb public morals in the Republic of Korea. On cross-examination, Dr. TD conceded she could not speak to the "acceptance" or "commonality" of "child sex abuse depictions in anime and manga." Appellant's argument is akin to asserting that videos depicting people are prevalent in American culture, and some videos are sexually explicit, and therefore sexually explicit videos depicting children do not "disturb public morals." Appellant further argues the anime and manga images were not pornography because they do not depict real people. Giving "pictorial" its ordinary meaning,[6] and considering the evident intent of the regulation to

---

[6] "[O]f or relating to . . . the painting or drawing of pictures" or "consisting of pictures: being in the form of a picture of pictograph . . . ." *Pictorial*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1967).

avoid "disturbing public morals,"[7] we find no requirement that "pornography" in this context is limited to images of actual people. Considering the images themselves, we readily find them "pornographic" as defined by the regulation.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," we find the evidence was legally sufficient to support Appellant's conviction. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction for importing pornography into the Republic of Korea in violation of USFK Regulation 190–41 is therefore both legally and factually sufficient.

**B. Post-Trial Delay**

Although not raised as an assignment of error, we note Appellant was sentenced on 24 March 2017 but the convening authority did not take action until 2 August 2017, 131 days later. This period exceeded the 120-day threshold for a presumptively unreasonable post-trial delay established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

Where, as here, an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). The record of trial indicates transcription of the proceedings was delayed by the court reporter's transcription of another case, the authentication of the record was delayed a number of days due to the military judge's leave, and the Defense requested and received a ten-day extension to submit clem-

---

[7] Appellant's acquittal of possessing "obscene visual representations of the sexual abuse of children" does not impugn his conviction for violating USFK Regulation 190–41. His conviction for the latter did not require evidence that he imported "obscene" material into Korea, only that he imported "pornography" as defined by the regulation, to include pictures portraying sexual acts. It was entirely logical for the military judge to acquit Appellant of one offense and to convict him of the other. Moreover, these findings do not prevent us from referring to the anime and manga images to assess the legal and factual sufficiency of the Article 92, UCMJ, conviction. *See Rosario*, 76 M.J. at 117.

ency matters. We further note the convening authority granted substantial clemency to Appellant, reducing his term of confinement from 12 to 6 months in recognition of his good military character and record of performance. Finally, we observe Appellant's case was docketed with this court on 22 August 2017, only 20 days after action and well within the *Moreno* standard of 30 days. *Moreno*, 63 M.J. at 142. Considering the relevant factors together, we conclude the delay was not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court