# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39688**

————————————

**UNITED STATES**
*Appellee*

v.

**Brian M. SCHMITT**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 September 2020

————————————

*Military Judge:* John C. Degnan.

*Approved sentence:* Dishonorable discharge, confinement for 6 months, forfeiture of all pay and allowances, and reduction to E-3. Sentence adjudged 14 February 2019 by GCM convened at Hill Air Force Base, Utah.

*For Appellant:* Major M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Sarah L. Mottern, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, KEY, and ANNEXSTAD, *Appellate Military Judges.*

Judge KEY delivered the opinion of the court, in which Chief Judge J. JOHNSON and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 934.[1] Appellant was sentenced to a dishonorable discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to the grade of E-3. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises two issues. He first alleges his conviction is factually and legally insufficient. Second, he asserts a dishonorable discharge is an inappropriately severe punishment. Finding no error prejudicial to the substantial rights of Appellant, we affirm.

## I. BACKGROUND

After receiving a tip, Air Force Office of Special Investigations (AFOSI) agents came to suspect Appellant of being involved with child pornography. They called Appellant in for an interview, and Appellant—after waiving his rights—admitted to downloading images of underage girls from the Internet. Appellant specifically said he used his cell phone to find the images, and he saved them on his phone, which had a microSD memory card installed. At the end of the interview, agents confiscated Appellant's phone along with its memory card and sent both to a specialist for forensic analysis.

Appellant's preferred pornographic niche was of images known as "celebrity fakes." This particular genre basically involves the digital placement of a celebrity's face on someone else's body such that the end result is a picture of what appears to be a nude celebrity or a celebrity engaged in sexual conduct. During his interview, which was prior to any sort of search or analysis of his phone by law enforcement, the interviewing agent asked Appellant how child pornography wound up on his phone. In asking this, the agent suggested Appellant had searched for terms like "Lolita" and "preteen," although Appellant himself had not claimed he had done so. The agent asked what sort of child pornography was on the phone, and Appellant said, "I guess there's a few, like, Disney stars that might possibly be underage." Appellant said the more of this pornography he saw on the Internet, the more interested he became, and he would use search terms to find what he was looking for. He explained he would "put in, like, Lolita, I guess things like that. I guess, just, Disney girls, not even a particular age, but just—yeah."

Appellant later acknowledged searching "a few times" for "Lolita," and when the agent asked Appellant what "Lolita" meant to him, Appellant answered "young girl" and nodded in agreement when the agent suggested, "under the age of 18." Appellant said he found the term "Lolita" when it appeared

[1] All references in this opinion to the Uniform Code of Military Justice are to the *Manual for Courts-Martial, United States* (2016 ed.).

during his searches for "younger Disney ones." The agent asked Appellant what "preteen" meant to him, and Appellant said, "anything under, I would say, eighteen." He later said he would type in "under 18" as a search term, along with words like "sexy" or "nude." The agent asked if there were any physical details in the images that led Appellant to assume the subjects were underage, and Appellant answered, "I guess, smaller breasts, but, I guess I'm slightly attracted to that to a point, but even with adult women I'm kind of like that." Appellant said some of the pictures "were just the girl themselves nude, and some were performing sexual acts as well." He said his phone had a microSD card in it, and that he would save the images he found in a folder named "Fakes" as well as in a folder named "Downloads" using the phone's "download feature." He explained he would save the images on his phone because he kept the phone with him at all times, thereby minimizing the chance of someone happening upon his collection.

At the end of his interview, Appellant executed a short written statement at the agent's behest. Appellant wrote, "The situation started with me searching online for celebrity fakes porn. It continued onto younger and younger pictures. I started searching for preteen pictures (under 18) and started to save them on my phone." He also wrote, "[t]his process continued with searches of [L]olita as well," and he characterized the investigation as "a wake up call."

The subsequent analysis of Appellant's phone discovered the Fakes and Downloads folders, and together they contained more than 20,000 "celebrity fake" images, the vast majority of which appeared to be solely of adults. The analysis found three images of known child pornography, and the Government identified another 49 images of suspected child pornography, many of which appeared to be of children with their faces replaced by those of various celebrities. The Government ultimately proceeded to trial on these 49 images plus one of the known images of child pornography—the filename for which was a seemingly random series of numbers and letters ending in "49B" and which was found in the Fakes folder.[2] The 49B image is primarily of a female's face with her eyes closed and a man's penis in her mouth. She appears to be squatting down and wearing a baggy shirt that is somewhat pulled up to expose a small part of right breast such that her nipple is visible, but only faintly so due to the shadows and the picture's focal point (which is her head). Her genitals

---

[2] Of the 50 images the Government offered at trial, 39 were from the Fakes folder and 11 were found in the Downloads folder.

are obscured by her hand, and her breasts appear to be developed. Text super-imposed on the picture suggests the male is "daddy" and that the female is saying he "tastes of mommy."[3]

Although the forensic analysis of Appellant's phone and the memory card found the images referenced above, the analyst could not say what terms Appellant used to find the images, nor could the analyst say where the images were downloaded from. He found evidence of online searches for terms such as "incest porn," "daddy daughter incest," and "lolicon,"[4] but he found no evidence Appellant had used the terms "Lolita" or "preteen" on his phone, although he hypothesized that Appellant may have masked those searches by using web browser privacy modes. On cross-examination by trial defense counsel, the analyst acknowledged he could not say how the images wound up on Appellant's phone and that they were not necessarily downloaded directly from the Internet (that is, they could have arrived by email or some other method of transfer). The analyst did say that getting the pictures into the Fakes folder "would have required user action," but he could not identify any particular action Appellant actually took, nor could he say that anyone ever viewed any of the images at all.

In an effort to prove the images depicted children (or at least the bodies of children), the Government called an expert in forensic pediatrics, Dr. AL, who testified that, in her opinion, each of the 50 images depicted a child under the age of 18. Dr. AL attempted to identify the approximate ages of the people in the pictures, but her analysis was complicated by the fact that she used the facial features of the people in the images to reach her conclusions—which is to say she analyzed facial features that had no actual connection to the bodies they had been appended to. Dr. AL testified she never watched television and rarely saw movies, and she was unable to identify any of the celebrity faces in the pictures or determine whether the faces belonged to the bodies. She conceded that without being able to make use of facial features in at least one case, "it would be very difficult to determine to a reasonable degree of medical certainty that this was not just a small-breasted individual who was an adult."

---

[3] Several of the other images found on Appellant's phone had captions suggestive of parental and sibling incest along with sexual conduct between step-siblings. Appellant asserts the text should be read to indicate that the female in the picture is being portrayed as "mommy," but an equally plausible interpretation is that the female is being portrayed as a daughter. No evidence was introduced that would explain when the text was placed on the picture or who added it.

[4] The analyst testified "lolicon" is a term associated with cartoons depicting underage girls.

Dr. AL's conclusion that all of the pictures were of children was further undermined when the Defense later introduced evidence that the models in at least three of the pictures were adults, and one was 33 years old when her picture was taken.

In support of the image of known child pornography, image 49B, the Government called AA to testify.[5] AA identified herself as the female in the picture and explained she was 14 years old when it was taken, more than ten years earlier. When asked how Appellant's possession of the image impacted her view of the military, she answered, "He's just one person. He doesn't represent the whole military. It doesn't change my view as far as how I feel and how I respect the military. He's just one person." She later elaborated she did not expect to be testifying at a court-martial, explaining, "Me, personally, I hold the military at a very high standard. And it's just not where you would expect something like this to be found."

Trial defense counsel called Dr. MC, an expert in forensic psychology, to discuss law-enforcement interview techniques and false confessions. He pointed out that the AFOSI interviewer was the first one to mention search terms such as "Lolita" and "preteen," explaining the only term Appellant volunteered that had not been first suggested by the agent was "Disney fakes." Dr. MC went on to say that one tactic employed in Appellant's interview was an attempt to create a sense of hopelessness by making Appellant believe the Government had him "dead to rights" and then minimizing Appellant's conduct such that Appellant would conclude there would be no serious consequences to confessing. The Defense's ultimate theory was Appellant had merely adopted the suggestions offered by the agent—admitting to conduct the agent implied was only nominally improper—and thereby falsely confessed to searching for child pornography.

In closing, trial counsel argued, "one image, that might be a mistake. Two images, that might be an accident. Fifty images? That is not a mistake. That is not an accident. That is the knowing and wrongful possession of child pornography." The military judge, however, only convicted Appellant of possessing one picture of child pornography—image 49B.

Other than his court-martial conviction, Appellant had a laudable Air Force career, being recognized as the honor graduate at basic military training, being deployed to a combat environment, and rapidly ascending in grade to become a noncommissioned officer. Evidence introduced by Appellant during the sen-

---

[5] For purposes of this opinion, we refer to this witness as "AA," although those letters do not correspond to the name she testified under.

tencing proceedings indicated he was recognized as hard-working and dedicated by his fellow Airmen. The Government produced no evidence of any other misconduct or professional infractions committed by Appellant. By virtue of his conviction, Appellant faced a maximum sentence including a dishonorable discharge and ten years in confinement. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 68b.e.(1). Trial counsel asked the military judge to sentence Appellant to a dishonorable discharge and two years of confinement, in addition to forfeiture of all pay and allowances and reduction to the grade of E-1. The military judge sentenced Appellant to somewhat less: a dishonorable discharge, six months of confinement, total forfeitures, and reduction to the grade of E-3.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant argues his conviction is both legally and factually insufficient by virtue of the fact that a person unaware of AA's actual age at the time image 49B was taken would not be able to conclude she was under 18 years old simply by looking at the picture. He points to the fact nothing in the filename indicates that the image depicts a minor as well as the absence of evidence establishing where the picture came from and what search terms, if any, were associated with the image.

#### 1. Law

We only affirm findings of guilty that are correct in law and fact and, "on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). Circumstantial evidence may suffice. *See United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014) (citing *Brooks v. United States*, 309 F.2d 580, 583 (10th Cir. 1962)). "[I]n resolving questions of legal sufficiency, we are bound to draw

every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted), *cert. denied*, __ U.S. __, 139 S. Ct. 1641 (2019).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

### 2. Analysis

Appellant was convicted of a single specification of possessing child pornography, which required the Government to prove beyond a reasonable doubt: (1) that Appellant knowingly and wrongfully possessed child pornography, and (2) that, under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 68b.b.(1). "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1). "Sexually explicit conduct" includes actual or simulated sexual intercourse, sodomy, bestiality, masturbation, sadistic or masochistic abuse, or the "lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c.(7).

Considering AA's testimony that she was 14 years old at the time image 49B was taken and the fact the picture plainly depicts male genitalia and an act of oral sodomy, there is no serious argument that the picture does not constitute child pornography. The issue is whether Appellant knowingly and consciously possessed it. "Possessing" is defined as "exercising control of something" and "[p]ossession inherently includes the power or authority to preclude control by others." *MCM*, pt. IV, ¶ 68b.c.(5). Our superior court has described the test for possession of child pornography as whether an accused had "dominion and control" over the contraband. *United States v. Navrestad*, 66 M.J. 262, 267–68 (C.A.A.F. 2008). That possession also must be knowing and conscious. *Id.* at 267 (citation omitted).

The image Appellant was convicted of was found in the Fakes folder—a location where Appellant admitted to storing the pictures he downloaded from the Internet. The image itself, however, does not obviously depict a child due to the camera angle, focal point, and lack of physical cues with respect to the subject's body. As such, the image is the sort that could conceivably be acquired unintentionally in the pursuit of adult pornography. In that light, Appellant's possession of this single picture amidst more than 20,000 licit images might suggest he inadvertently downloaded it while amassing his voluminous collection of "celebrity fake" images. Yet that conclusion requires a willful blindness to the other evidence in this case—most notably Appellant's own confession that he had been seeking out child pornography and purposely saving what he found in folders on his phone.

Appellant told the AFOSI agent that he used search terms that he thought would return images of girls under the age of 18, and he wrote in a sworn statement he was "searching for preteen pictures (under 18)" and he "saved pictures of underage girls onto [his] phone." Despite Appellant's expansive definition of the word "preteen," he was clear he had sought pictures of minor females, and he found pictures of such girls both nude and engaged in sexual conduct. Appellant explained his online pursuit of child pornography began while searching for "celebrity fakes porn." Appellant's confession was directly corroborated by the analysis of his phone. The phone not only had a microSD card in it, but also had folders named "Fakes" and "Downloads"—folders which contained thousands of images of "celebrity fake" images, just as Appellant had described. True to Appellant's word, the phone also contained images that appeared to be of underage females with their heads replaced by those of celebrity actresses. The females in those pictures were simply unclothed in some cases and engaged in explicit sexual conduct in others. Acknowledging his culpability, Appellant described his attention from law enforcement as "a wake up call."

Appellant's phone also indicated he had searched for pornographic images depicting incest, and a number of the images introduced at trial—to include image 49B—had text superimposed on them suggesting they depicted acts of or a willingness to engage in incest with parents or siblings.[6] Although these images generally did not specifically identify the age of the subjects, the ones introduced at trial mainly featured females who appeared to have underdeveloped bodies. As demonstrated at trial, not all of the subjects in these pictures were actually under the age of 18 when the pictures were taken, but they corroborate Appellant's admissions that he sought pictures of "younger and

---

[6] For example, one image had been manipulated to portray a celebrity father molesting his celebrity daughter.

younger" and "underage" girls. The fact he downloaded pictures of females who were at least 18 years old when they were photographed does not negate the fact he downloaded one picture of a female who was under the age of 18, precisely as Appellant said he sought out to do. The evidence obtained from Appellant's phone corroborates Appellant's confessions during his AFOSI interview and in his written statement, undermining any claim Appellant was lured into confessing falsely or that he accidentally swept up image 49B in his compilation of "celebrity fake" pornography.

With respect to whether Appellant's possession of image 49B was service discrediting, we look to the *MCM*'s definition of "discredit," which means "to injure the reputation of." *MCM*, pt. IV, ¶ 60.c.(3). The *MCM* goes on to explain that service-discrediting conduct is that "which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." *Id.* The crux of this concept is that an accused's conduct must only have the *tendency* to bring the service into disrepute to support a conviction, and we have not required public awareness of the conduct to establish such a tendency. *See, e.g.*, *United States v. Mead*, 63 M.J. 724, 729 (A.F. Ct. Crim. App. 2006). When propagated across the Internet, digital images of child pornography such as image 49B amount to the repeated and persistent sexual exploitation of the children captured in those images. Such is demonstrated in this case, where AA was called to testify in a military court-martial more than ten years after her picture was taken. Although AA said Appellant's conduct did not change her opinion about the military, she also said she held the military to a high standard, and she would not expect the picture to be found in a military member's possession. AA's measured reaction amply demonstrates the tendency of child pornography possession to bring the service into disrepute or to lower it in public esteem. She believes military members should be above seeking out and retaining such material, which is a fair and rational aspiration—one which Appellant's possession of child pornography squarely undermines.

By seeking out pictures of girls under the age of 18 years old using sexually charged search terms, finding an image depicting sexually explicit conduct of a minor, and then taking the active step of saving the image into a specific folder in his phone's storage, we conclude a rational factfinder could find Appellant exercised sufficient dominion and control over image 49B to possess it. Such a factfinder could similarly conclude Appellant's conduct was service discrediting and find him guilty beyond a reasonable doubt of possessing child pornography. Therefore, we find Appellant's conviction legally sufficient. We ourselves are convinced of Appellant's guilt beyond a reasonable doubt, rendering his conviction factually sufficient as well.

**B. Sentence Appropriateness**

Appellant also argues that a sentence including a dishonorable discharge is inappropriately severe for possessing a single image of child pornography in light of his otherwise commendable service record, especially when the image "depicts a mature teenager rather than an easily identifiable child."

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citation omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

### 2. Analysis

By all indications, Appellant was an effective Airman on duty, earning swift promotions. Off-duty, however, Appellant spent his time searching for images of young girls within a particular pornographic niche. By finding and saving the picture of AA, he perpetuated her exploitation, leading her to be called to testify at his court-martial. Despite being convicted of possessing just one image of child pornography, Appellant's criminal conduct in searching it out and saving it for his later viewing and personal gratification was serious. We recognize his sentence to a dishonorable discharge is likewise severe. We have considered Appellant; the nature and seriousness of his offense; his military service record, to include the matters he submitted in extenuation, mitigation, and clemency; and all the matters in the record of trial. We conclude his sentence is severe, but it is not inappropriately so.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court