*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Rebecca M. DURBIN**
Captain (O-3), U.S. Marine Corps
*Appellant*

**No. 202400333**

———————————

Decided: 2 June 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Ryan C. Lipton (motions)
Adam J. Workman (arraignment and trial)

Sentence adjudged 1 May 2024 by a special court-martial tried at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: a reprimand.

For Appellant:
*Lieutenant Colonel Todd F. Eslinger, USMC*

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN*
*Lieutenant K. Matthew Parker, JAGC, USN*

Judge GANNON delivered the opinion of the Court, which Judge FLINTOFT joined. Senior Judge KISOR filed a dissenting opinion.

———————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

GANNON, Judge:

A military judge convicted Appellant, contrary to her pleas, of one specification of conduct unbecoming an officer in violation of Article 133, Uniform Code of Military Justice (UCMJ),[1] for manually stimulating the penis of Mr. Lima[2] in her vehicle.[3] She was sentenced to a reprimand. Appellant asserts a single assignment of error (AOE): is the evidence legally and factually sufficient to sustain Appellant's conviction for conduct unbecoming an officer?[4]

## I. BACKGROUND

Appellant and Mr. Lima deployed together from 2021-2022. They were both captains in the U.S. Marine Corps and began a relationship during the deployment. Mr. Lima was married when his relationship with Appellant became sexual. Mr. Lima explained to Appellant that he was "separated, but not legally separated" from his wife.[5] Upon returning home from deployment, Appellant and Mr. Lima – who had by then been promoted to major – continued their personal and sexual relationship between April and June of 2022.[6]

———————————————

[1] 10 U.S.C. § 933.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms. Mr. Lima and Appellant began their sexual relationship when Mr. Lima was a U.S. Marine Corps Captain (O-3). Mr. Lima promoted to Major and was subsequently administratively separated from the Marine Corps. Thus, we use the title "Mr." as opposed to "Major" throughout the opinion.

[3] Entry of Judgment at 2.

[4] Appellant's Brief at 2.

[5] R. at 282.

[6] A week after returning home from deployment, Mr. Lima promoted to Major and became the Operations Officer, a position of leadership in the command.

On 14 June 2022, Appellant reported to the Naval Criminal Investigative Service (NCIS) that Mr. Lima had confided in her that he was having sexual relations with a seventeen-year-old girl from his neighborhood.[7]

Appellant also advised NCIS that she and Mr. Lima engaged in consensual intercourse previously (but she did not want to go into detail), and that she had allowed Mr. Lima to masturbate in her vehicle on several occasions.[8] Mr. Lima provided a statement to NCIS in which he denied any sexual relationship during the deployment and terminated the interview shortly thereafter. NCIS ultimately closed its investigation and referred the misconduct to the command for further investigation.

Following a command investigation, Appellant and Mr. Lima were charged with conduct unbecoming an officer and extramarital sexual conduct in violation of Articles 133 and 134, UCMJ. Mr. Lima was also charged with violation of Article 131b, obstruction of justice. On 8 March 2023, the Commanding General, 2d Marine Aircraft Wing, notified Appellant of his intent to impose nonjudicial punishment (NJP).[9] On 20 March, after consulting with counsel, Appellant refused to accept NJP.[10] The case was subsequently referred to a special court-martial.[11]

Contrastingly, Mr. Lima accepted and received NJP for his misconduct and ultimately was referred to a board of inquiry (BOI). In response to his report of NJP, Mr. Lima provided a statement admitting that he had masturbated in Appellant's truck at Appellant's request.[12] At his BOI, he testified that he hoped he would be a witness "whenever her time comes."[13] He was subsequently administratively separated from the Marine Corps.

At Appellant's court-martial, the Government called six witnesses, including the NCIS agents who conducted Appellant's and Mr. Lima's interviews, the command investigation officer, and Mr. Lima. Mr. Lima testified that on several occasions, between 6 April 2022 and 6 June 2022, Appellant manually stimulated Mr. Lima's penis while in Appellant's truck. Specifically, Mr. Lima testified that there were three occasions where Appellant manually stimulated

---

[7] App. Ex. IV at 8.

[8] R. at 362.

[9] App. Ex. XIII at 8.

[10] App. Ex. XIII at 11.

[11] Charge Sheet.

[12] App. Ex. XX at 16.

[13] App. Ex. XX at 30.

Mr. Lima's penis while they sat in her truck: once while off-base in Jacksonville, North Carolina, and twice aboard Marine Corps Air Station, New River. Each time, Mr. Lima testified that the encounters would begin with Appellant touching Mr. Lima's penis over his flight suit and escalate from there. Mr. Lima testified that on 6 June 2022, while on base and in uniform, Appellant manually stimulated his penis while parked in the parking garage near their squadron headquarters, which was located in a "mega hanger."[14] The parking garage was located approximately 60 yards from the mega hangar, which housed four Osprey squadrons. The parking structure was generally accessible to base personnel and anyone on the air station had access to it.[15]

To impeach Mr. Lima's character for truthfulness, the Defense presented testimony from Mr. Lima's estranged wife. Her testimony included instances in which Mr. Lima had asked her to delete certain accounts while he was under investigation as well as her opinion as to his lack of truthfulness.

## II. Discussion

**The Evidence is Legally and Factually Sufficient to Support Appellant's Article 133 Conviction.**

*1. Legal Sufficiency*

a. Standard of Review

Courts of Criminal Appeals "may affirm only such findings of guilty as the Court finds correct in law"[16] and will apply a de novo review.[17] To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[18] As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction.[19] "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable

---

[14] The "mega hangar" is a large aircraft maintenance facility aboard Marine Corps Air Station, New River; it is used by several squadrons from 2d Marine Aircraft Wing.

[15] R. at 228.

[16] 10 U.S.C. § 866(d)(1)(A).

[17] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[18] *United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018) (citation omitted).

[19] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (quoting *United States v. Navrestad*, 66 M.J. 262, 269 (C.A.A.F. 2008) (Effron, C.J., joined by Stucky, J., dissenting)).

inference from the evidence of record in favor of the prosecution."[20] The Government is free to meet its burden of proof with circumstantial evidence.[21]

To be found guilty of violation of Article 133, the trier of fact must find: "(1) [t]hat the accused did or omitted to do a certain act; [and] (2) [t]hat, under the circumstances, the act or omission constituted conduct unbecoming an officer and gentleman."[22] Conduct that is violative of Article 133 includes:

> action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentlemen, a lack of which is indicated by dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice or cruelty. Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the Service and military necessity below which the personal standards of an officer…cannot fall without seriously compromising the person's standing as an officer. This article prohibits conduct by a commissioned officer…which, taking all of the circumstances into consideration, is thus compromising.[23]

### b. Analysis

Appellant contends the "trier of fact would have to completely disregard all the evidence showing [Mr.] Lima's bias and character for untruthfulness to somehow carry the weight of his testimony [for the Government to prove Appellant's guilt] 'beyond a reasonable doubt.'"[24] We disagree. Here, the military judge heard the evidence regarding Mr. Lima's bias and character for untruthfulness and convicted Appellant nevertheless. After reviewing the military judge's conduct of the trial, we are convinced that the military judge did not "disregard" anything. The military judge presided over a thorough and utterly

---

[20] *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

[21] *King*, 78 M.J. at 221.

[22] *Manual for Courts-Martial*, United States (2019 ed.) (*MCM*) pt. IV, para. 90. The MCM further explains that "gentleman" as used in the article, includes both male and female commissioned officers. In 2021, Congress struck the words "and a gentleman" from Article 133. National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §542, 135 Stat. 1541, 1709 (2021).

[23] *MCM,* pt. IV, para. 90.c.(2).

[24] Appellant's Brief at 11-12.

fair proceeding. Sitting as finder of fact, the military judge exercised his role diligently and reached findings that are supported by the record. Our review of the record does not tempt us to disturb the military judge's findings.

After reviewing the evidence in the light most favorable to the Government, we find that a reasonable factfinder could have found the elements of conduct unbecoming of an officer. We find that at the time of the misconduct Appellant was a commissioned officer; Appellant manually stimulated Mr. Lima's penis on divers occasions, on and off base; and did so once in a parking structure adjacent to a large maintenance facility housing four squadrons, while in uniform and during working hours. We find that under the specific circumstances of this case, Appellant's actions land squarely within the Article's contemplated prohibition on indecency and did seriously compromise Appellant's standing as a commissioned officer. We are convinced that the evidence presented to the military judge was legally sufficient to sustain Appellant's conviction, and under these circumstances, the conduct was unbecoming of an officer.

With due respect to our dissenting colleague, we are perplexed by his exhortation that as a matter of law, Appellant's conduct was not conduct unbecoming an officer. Setting aside for a moment that no party, either at trial or on appeal, has challenged Appellant's conduct as legally insufficient based on the theory that the conduct in question is not unbecoming, it seems axiomatic that two Marine officers, one of whom is married, engaging in sexual activity in a public area of the base, in uniform, during working hours is *per se* unbecoming. In reading the dissent, our esteemed colleague argues:

> The majority here permits the stretching of the concept of "conduct unbecoming of an officer" beyond its logical limits, converting a standard meant to safeguard the integrity of the service into a tool for policing private, otherwise lawful behavior. Such a puritanical approach to statutory interpretation founders on the rocks of modern common sense.[25]

Nothing could be further from the truth. While we are uncertain what our dissenting colleague exactly means by "*modern* common sense," the historical roots of Article 133 convince us that mandating honorable, modest, and becoming conduct of officers is as relevant today as ever. Article 133 is rooted in the British antecedents to our military disciplinary traditions and law.[26] It has

---

[25] *Post*, at 2 (Opinion of Kisor, SJ).

[26] *Parker v. Levy*, 417 U.S. 733, 745 (1974) (citing Section XX, Art. III, of the British Articles of War of 1765; W. Winthrop, Military Law and Precedents 946 (2d ed. 1920)).

long been understood that military officers in the Anglo-American tradition were expected to comport themselves not only in terms of efficient soldierly virtue with respect to technical proficiency, but morally as well. Dating to at least the eighteenth century, British and American officers were prohibited from acting in a "scandalous, infamous [m]anner."[27] Based on the clear historical tradition of prohibiting scandalous behavior among the officer corps, we respectfully reject our dissenting colleague's assertion that the conduct at issue here does not constitute a crime.[28]

Officers must, from time to time, issue orders that have life and death consequences. It is no surprise then that Congress carved out a unique flavor of criminal liability assignable only to officers whose dignity and authority must be beyond reproach. Our superior court too, has long held military officers to a stricter level of accountability than enlisted personnel.[29] The high moral standards expected of officers of the U.S. Armed Forces is legitimate and to be lauded. Such values must not be relegated to some antinomian modernism as the dissent would suggest. As Justice Blackmun wrote in *Parker v. Levy*—soldiers are expected to know the general difference between right and wrong and

---

[27] "Whatsoever Commissioned Officer shall be convicted before a General Court-martial, of behaving in a scandalous infamous Manner, such as is unbecoming the Character of an Officer and a Gentlemen, shall be discharged from Our Service." Section XV, Art. XXIII of the British Articles of War of 1765; *See also* Article XLVII of the American Articles of War of 1775.

[28] The dissent also highlights the fact that the misconduct here was unseen by others and therefore, not violative of Article 133. This too is misguided. Our superior court made clear that conduct does not need to be published or discovered for it to be conduct unbecoming of an officer. *United States v. Norvell*, 26 M.J. 477, 478 (C.M.A. 1988) ("[C]onduct which is entirely unsuited to the status of an officer . . . often occurs under circumstances where secrecy is intended.").

[29] *Cf. United States v. Gonzalez*, 86 M.J. 165, 169 (C.A.A.F. 2025) (explaining that a married U.S. Army officer was on notice that kissing a junior enlisted Sailor on the lips was sanctionable conduct under Article 133 because such conduct constituted fraternization; that Article 133 is not preempted by other punitive articles of the UCMJ; and that the gravamen of Article 133, UCMJ, is rooted in the tradition of holding military officers to a higher moral standard so as to prevent conduct that disgraces the officer personally, or brings dishonor to the military profession such as to affect the officer's fitness to command the obedience of subordinates, or adversely impact the military mission.).

are held to a higher standard of behavior.[30] We shudder to imagine the practical implications the dissent would foist on the moral authority of Navy and Marine Corps officers in defining the conduct at issue here as mere "lapses in judgment."[31]

### 2. Factual Sufficiency

#### a. Standard of Review

This Court may consider whether a finding of guilty is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof.[32] After an appellant makes such a showing, this Court may weigh the evidence and determine controverted questions of fact, providing appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence.[33] If this Court is clearly convinced that the finding of guilty was against the weight of the evidence, it may dismiss, set aside, or modify the findings, or affirm a lesser finding.[34]

#### b. Analysis

Appellant argues Mr. Lima had an "overt personal grudge against Appellant and a track record for lying" and therefore no reasonable factfinder could have convicted Appellant based on Mr. Lima's testimony.[35] In short, Appellant points us to Mr. Lima's character for untruthfulness and motive to fabricate as her "specific showing of a deficiency in proof."

In *United States v. Valencia*, this Court held that "a general disagreement with a verdict falls short of a specific showing of a deficiency in proof, and thus

---

[30] *See Parker v. Levy,* 417 U.S. at 762-63 (Blackmun, J., with whom Burger, C.J., joined, concurring) (explaining that servicemembers understand "concepts of 'right' and 'wrong'" and that "[f]undamental concepts of right and wrong are the same now" as they've always been); *see also United States v. Meakin*, 78 M.J. 396, 404 (C.A.A.F. 2019) (detailing the history and purpose of Article 133, UCMJ, and noting that "it has historically been the case that officers are held to a higher standard of behavior.").

[31] *Post*, at 2 (Opinion of Kisor, SJ).

[32] 10 U.S.C. § 866(d)(1)(B).

[33] 10 U.S.C. § 866(d)(1)(B)(i)(I).

[34] 10 U.S.C. § 866(d)(1)(B)(iii).

[35] Appellant's Brief at 6.

will not trigger a full factual sufficiency analysis."[36] We continue to hold to that standard.

While the Court of Appeals for the Armed Forces affirmed our holding in *Valencia*, we are mindful of the possibility that the CAAF may have disagreed with our holding that a "general disagreement" with the verdict is insufficient to trigger a factual sufficiency review. Accordingly, we will assume that Appellant's broad-based attack on Mr. Lima's credibility – all of which was pressed below and all of which was considered by the military judge – is sufficient to trigger a factual sufficiency review. Having done so, we have no trouble concluding that the evidence is factually sufficient.

First, the statute requires that we give the trial court, in this case the military judge, appropriate deference as he saw and heard the witnesses.[37] The CAAF in *United States v. Harvey* held that the appropriate level of deference accorded the factfinder will "depend on the nature of the evidence at issue."[38] Based on the nature of the evidence in this case – a pure contest of Mr. Lima's credibility – we believe that the level of deference required is at its apogee. The military judge considered all the evidence, acquitting Appellant of Charge II and its specification (extramarital sexual conduct) and acquitting Appellant of certain conduct alleged to be unbecoming. Accordingly, we give the trial court a "high" level of deference because we did "not see [Mr. Lima] testify."[39]

Additionally, and perhaps most importantly, Mr. Lima's testimony was corroborated with additional evidence, including Appellant's own statement to NCIS and text messages exchanged between the parties, such as: (1) they began their sexual relationship in December 2021; (2) they had intercourse in March 2022; (3) they continued their relationship after returning from deployment in April 2022; and, (4) Appellant allowed Mr. Lima to use her car to masturbate on numerous occasions between April and June 2022. Appellant now requests the Court to believe *all* those facts (in order to establish Mr. Lima's

---

[36] *United States v. Valencia*, 85 M.J. 529, 535 (N.M. Ct. Crim. App. 2024), *aff'd,* __ M.J. __, 2025 CAAF LEXIS 966 (C.A.A.F. Nov. 24, 2025) (mem.).

[37] 10 U.S.C. § 866(d)(1)(B).

[38] *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024).

[39] *Id. See United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000) (stating that a military judge is "presumed to not have relied on [inadmissible] evidence on the question of guilt or innocence."). There is no claim here that the military judge considered inadmissible evidence. Accordingly, the frequent observation that the military judge is "presumed to the know the law and apply it correctly," should apply in a factual sufficiency context.

motive to lie during his testimony) except the *one* fact where she manually stimulated Mr. Lima's penis on divers occasions.

Given the circumstances in this case and the high degree of deference that we afford the military judge, and after weighing the evidence, we have no trouble concluding that the evidence is factually sufficient.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[40]

The findings and sentence are **AFFIRMED**.

---

[40] Articles 59 & 66, UCMJ.

KISOR, Senior Judge (dissenting):

I respectfully dissent from the majority opinion because the conviction for the residuum of Charge I after the military judge made *significant* exceptions is, in my view, legally and factually insufficient. Assuming Appellant engaged in consensual sexual activity on divers occasions with Mr. Lima between 1 April 2022 and 14 June 2022 in her truck, the Government did not prove at trial that this activity amounted to conduct unbecoming an officer on any of those individual instances. Although a display of dubious judgment, the consensual, and relatively innocuous, sexual activity that was charged in this case did not rise to the level of conduct unbecoming an officer *sufficient to constitute a crime.* Sexual activity of this nature (not involving either oral sex or copulation of any kind[1]) between consenting adults in a privately owned vehicle parked in a secluded location,[2] where no one sees it,[3] is not, in my view, a violation of Article 133, UCMJ. Thus, I do not view the evidence adduced at trial to be legally sufficient to sustain a conviction here. Further, I am clearly convinced that the verdict is against the weight of the evidence and should also be set aside as factually insufficient.

To be found guilty of violation of Article 133, the trier of fact must find: "(1) that the accused was a commissioned officer . . . (2) that the accused did or omitted to do certain acts; and (3) that, under the circumstances these acts or omissions constituted conduct unbecoming an officer."[4] Also to be a crime, action or behavior in an unofficial or private capacity "in dishonoring or disgracing the officer personally" must "seriously compromise . . . the person's standing as an officer."[5] Further, although not in force at the time of Appellant's trial, but demonstrating evolving standards, the present Manual for Courts-Martial explains that

> The gravamen of the offense is that the officer's conduct disgraces the officer personally or brings dishonor to the profession in a manner that affects the officer's fitness to command the obedience of the officer's subordinates so as to effectively complete the military mission.[6]

---

[1] R. at 285.

[2] R. at 289.

[3] R. at 290.

[4] *MCM* (2019 ed.) pt. IV, para. 90 (emphasis added).

[5] *MCM* (2019 ed.) pt. IV, para. 90.c(2).

[6] *MCM* (2024 ed.) pt. IV, para. 90.c(2).

1

Article 133 should be charged where conduct seriously compromises an officer's character or standing and thereby brings discredit upon the service. Acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty exemplify behavior that violate Article 133.[7]

At most, this record supports a finding of lapses in judgment that did not involve moral turpitude, indecency, or an intent to deceive. Elevating the kind poor judgment demonstrated here to conduct unbecoming an officer distorts the purpose of Article 133 and risks transforming this criminal charge into a catchall for lapses of judgment that do not amount to criminal behavior. Further, our precedent has consistently required a demonstrable nexus between the conduct which is unbecoming and officer and that officer's fitness to further serve. That nexus is absent here. The activity at issue in this case, given the evidence presented at trial, falls short of that demanding standard.

The majority here permits the stretching of the concept of "conduct unbecoming of an officer" beyond its logical limits, converting a standard meant to safeguard the integrity of the service into a tool for policing private, otherwise lawful behavior. Such a puritanical approach to statutory interpretation founders on the rocks of modern common sense. I would reverse this conviction. Thus, I respectfully dissent.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[7] *MCM*, pt. IV, para. 90.c(2).